UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ FEB 0 1, 2010
P.M.
TIME A.M.

---------------------------------------------------------------------x

NATIVITA ST. LOUIS,

                Plaintiffs,

      – against –

**MEMORANDUM AND ORDER**
No. 05-CV-1836 (SLT)(JMA)

NEW YORK CITY HEALTH AND HOSPITAL
CORPORATION, WOODHULL MEDICAL AND
MENTAL HEALTH CENTER, ALPHER SYLVESTER,
Individually and as aider and abettor, and ASTA
MOORHEAD, Individually and as aider and abettor,

             Defendants.

---------------------------------------------------------------------x

**TOWNES, United States District Judge:**[*]

    *Pro se* plaintiff Nativita St. Louis ("Plaintiff") alleges that she was sexually harassed,

discriminated against on the basis of her gender and was ultimately terminated from her position

as Assistant Director of Environmental Services at Woodhull Hospital in retaliation for

complaining about the harassment and discrimination.  Plaintiff asserts claims pursuant to Title

VII, 42 U.S.C. § 1983, New York State Human Rights Law ("NYSHRL") and New York City

Human Rights Law ("NYCHRL").  Now, New York City Health & Hospitals Corporation

("HHC"), Woodhull Hospital, Asta Moorhead and Alpher Sylvester (collectively, "Defendants"),

move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Upon

consideration of the written submissions of each party, and for the reasons set forth below,

Defendants' motion is granted.

**BACKGROUND**

---

[*] The Court gratefully acknowledges the assistance of Joanne Ricciardiello, in the preparation of this Memorandum and Order.

Plaintiff was employed as the Assistant Director of the Environmental Care Services Department at Woodhull Hospital from March 22, 1999 until January 27, 2003. Defendants' 56.1 Statement ("Def. 56.1") ¶ 1.[1] Prior to Plaintiff's employment, she signed a "Condition of Employment" form which classified her as a "Group 11" management employee. *Id.* at ¶ 2. As such, Plaintiff was an "at will" employee, not subject to the terms and conditions of a collective bargaining agreement and was not subject to the HHC North Brooklyn Health Network Policy and Procedure Human Resources Manual. *Id.* ¶ 3 and Ex. D "Decl. of Yvette Villanueva" ¶ 6. Plaintiff acknowledged in her condition of employment form that her working hours were subject to change and she could be required to work "evenings, nights and/or weekends and holidays." Def. 56.1 ¶ 5. At the outset of Plaintiff's employment, Plaintiff attended a new employee orientation program and signed a form stating she had "received an Employee Handbook" and an "overview of . . . Equal Employment Opportunity/Affirmative Action Policies." Def. 56.1 Ex. F "New Employee Orientation Verification Form." Throughout

---

[1] A *pro se* litigant should be given special latitude in responding to a summary judgment motion. *See McPherson v. Coombe*, 174 F.3d 276, 280-81 (2d Cir. 1999). Nevertheless, "[e]ven a *pro se* party is not exempt from the requirements of summary judgment motions." *Johnson v. Queens Admin. for Children's Servs.*, No. 02-CV-4497, 2006 WL 229905, at *4 (E.D.N.Y. Jan. 31, 2006) (citation omitted). Local Rule 56.1 requires a party opposing summary judgment to file a separate statement of material facts "as to which it is contended that there exists a genuine issue of material fact," and that controverts all material facts set forth in the moving party's Rule 56.1 Statement. Local Civil Rule 56.1(b)-(c). Any material fact in a movant's Rule 56.1 Statement not controverted by the opposing party is deemed admitted. *Id.* at 56.1(c). Nevertheless, parties are not permitted to controvert a moving party's material facts with conclusory or unsupported statements, as "each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible . . . ." *Id.* at 56.1(e). Here, Plaintiff did not specifically contest each numbered paragraph in the moving party's statement. Plaintiff also did not consistently cite to admissible evidence when Plaintiff did dispute Defendants' statements of facts. Courts have "broad discretion" in dealing with a party's failure to comply with local court rules. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 72 (2d Cir. 2001). In this case, the Court accepts Defendants' Rule 56.1 statements of fact which Plaintiff stipulated to, and has independently reviewed the record in all other instances.

Plaintiff's employment, Patrick Sullivan was the Deputy Director of the Environmental Services Department. *Id.* ¶ 7. Sylvester was the Associate Director of Environmental Services and reported to Sullivan. *Id.* ¶ 8.

As the Assistant Director of Environmental Services, Plaintiff's responsibilities included (a) refuse and waste management, which included disposal of infectious hospital waste in compliance with Federal, State and City health codes; (b) the linen and housekeeping operations for Woodhull Hospital; (c) the overall maintenance of a sanitary, germ free facility; and (d) the management and scheduling of a subordinate management team consisting of two coordinating managers and three supervisors. *Id.* ¶ 11-12. On November 30, 1999, Plaintiff received her first evaluation from Sylvester in which Plaintiff received an overall "superior" rating. *Id.* ¶ 13. Sylvester scored Plaintiff as "satisfactory" in regards to "waste management" and noted that Plaintiff needed to educate herself on regulatory issues involving hospital waste. *Id.* ¶ 14. Sylvester also noted that Plaintiff needed to quell her anxiety, take accountability for operational issues, and undergo "sensitivity training." *Id.* ¶ 15. On June 13, 2000, Sylvester was promoted from Senior Associate Director to Superintendent of Building and Grounds, made retroactive to September 1, 1999. Def. 56.1 Ex. D, "Decl. of Yvette Villanueva" ¶ 10. Sylvester continued to supervise Plaintiff, pending the hiring of a new Associate Director. *Id.* ¶ 10. On September 5, 2000, Sylvester conducted Plaintiff's second evaluation in which he rated her an overall "outstanding," but specifically rated her "satisfactory" in waste management and noted that Plaintiff needed to "quell anxiety" and demonstrate "a little more sensitivity" when dealing with her subordinates. *Id.* ¶ 17.

In April 2001, after Sylvester's promotion to Superintendent, the Woodhull Hospital administration announced that Plaintiff would be considered for Sylvester's former position on

an "acting" basis. Def. 56.1 Ex. D, "Decl. of Yvette Villanueva" ¶ 15. Although it is disputed as to whether Plaintiff's title formally changed, on June 5, 2001, Plaintiff was approved for a 10% pay increase to account for additional work responsibilities. Def. 56.1 ¶ 20. Plaintiff had become responsible for the daily supervision of the staff, managers and supervisors of the entire environmental services department, as well as to implement and monitor hospital policies created to achieve a safe and sanitary hospital environment. *Id.* ¶ 21. On August 8, 2001, Plaintiff received her third evaluation from Sylvester in which Plaintiff's "acting responsibilities" were evaluated and she was rated "satisfactory" overall. Def. 56.1, Ex. M "Managerial Performance Appraisal." Sylvester evaluated Plaintiff's efforts as "commendable," but specifically advised a "greater attention to detail," noted that Plaintiff "should expand [her] ability to handle several tasks at the same time," and with respect to overall linen operation of the hospital, Sylvester noted that "several critical operational issues still remain unresolved." *Id.* Regarding Plaintiff's interpersonal skills, Sylvester noted Plaintiff needed to focus on (a) "being a team player," (b) "being less emotional, less argumentative," and (c) "continu[ing] to work on being less sensitive, not personalizing situations." *Id.*

On January 14, 2002, after being interviewed by Sylvester and Deputy Director Sullivan, Moorhead was appointed to the position of Senior Associate Director of Environmental Services by Senior Associate Executive Director of Human Resources, Yvette Villanueva. *Id.* ¶¶ 32-34. At some point after Moorhead was appointed, and during the month of January 2002, Moorhead moved Plaintiff from the 7:00 a.m. to 3:00 p.m. shift to the 4:00 p.m. to 12:00 a.m. shift. Def. 56.1, Ex. B Pl. Dep. at 83:10-85:3. Plaintiff's shift was moved to address several problems and complaints that had occurred on the evening shift. Def. 56.1 ¶ 36. Nevertheless, Moorhead returned Plaintiff to the 7:00 a.m. to 3:00 p.m. shift in May 2002. Def. 56.1 ¶ 37.

In February 2002, Plaintiff received her fourth evaluation, for the period of April 2001 through January 2002, in which Sylvester rated Plaintiff an overall "marginal." Def. 56.1 Ex. W "Jan. 7, 2003 NYSDHR Complaint." Although Plaintiff received her review at some point in February 2002, the review was officially issued on March 14, 2002. *Id.* ¶¶ 25-26. Sylvester noted in the review that Plaintiff's "increased responsibility seemingly overwhelmed [her]," and that "this evaluation indicates that [Plaintiff] is more effective in an Assistant Directorship position." *Id.* ¶ 26-27. Sylvester justified his overall rating by noting:

> Mangers [sic] overall performance as an Associate Director (A) leaves much to be desired. It was evident that the responsibility of the position eluded her ability to meet the challenges presented by the position. Within her tenure, the general operation and the cleanliness of the facility were adversely affected. Consequently, a new director was recruited to fill the position.

> Manager lacked the maturity and objectivity commensurate with the position. Her emotional outburst and argumentative nature with her subordinates as evidence [sic] by prior physical confrontation has compromised her ability to be an effective leader or basically to get the job done.

> Manager failed to grasp the latitude afforded her within the assignment; consequently opportunity to excel in the execution of moderate assignment was compromised by excuses and neglect. Commitment to follow through on basic assignment was further compromised by her inability to deal with several tasks at the same time and an overwhelming willingness to divest responsibility for most assignments without adequate systems for feedback or accountability.

> Manager's failure to be a team player has adversely affected her performance and success within this assignment.

*Id.* ¶ 28.

On March 11, 2002, Woodhull Hospital received a fine of $11,200 for improper disposal of medical waste. *Id.* ¶ 38. Although it is unclear whether the violation occurred during Plaintiff's shift, refuse was Plaintiff's responsibility during that time period. Def. 56.1 Ex. P Moorhead Dep. 181:1-183:12. At some point after the fine was levied, Moorhead discussed cleanliness deficiencies with Plaintiff in her areas of responsibility. *Id.* at 71:5-75:25. On July

15, 2002, Plaintiff received a warning for insubordination for failing to submit a Managerial

Appraisal Form to Moorhead, even after Plaintiff received an extension to ensure timely

submission. Def. 56.1 ¶ 40. On July 31, 2002, Plaintiff received her first evaluation from

Moorhead, which covered March 2002 through June 2002. Def. 56.1 ¶ 41. Plaintiff received an

overall "marginal" rating. *Id.* In that review, Moorhead identified the corrective action plans

needed to address the noted deficiencies, although there is a dispute as to whether the corrective

plans identified by Moorhead and affirmed by Sullivan were ever actually implemented. Def.

56.1 Ex. S "Managerial Performance Appraisal." On September 20, 2002, Moorhead evaluated

Plaintiff's performance for the period of July 2002 through September 2002. Def. 56.1 ¶ 50.

Moorhead rated Plaintiff an overall "unsatisfactory" and recommended that Plaintiff be

terminated. *Id.* Sullivan signed the evaluation and recommendation on November 8, 2002. *Id.*

Plaintiff, however, was not terminated because she began a workers' compensation leave on

November 7, 2002, due to an alleged back injury sustained on the job. *Id.* at ¶ 54. Plaintiff

returned to work on January 27, 2003 and was terminated effective January 28, 2003. *Id.* at ¶ 55.

On January 7, 2003, while out on workers' compensation leave, Plaintiff filed a charge of

discrimination with the New York State Division of Human Rights ("NYSDHR"). *Id.* at ¶ 56.

Plaintiff alleged that between March 1999 and December 2001, she was sexually harassed by

Sylvester. *Id.* at ¶ 57. In support of this allegation, Plaintiff alleged Sylvester "'sometimes' gave

her 'hugs' that [she] felt were invading her space." *Id.* at ¶ 60. Plaintiff also asseverated that

Moorhead discriminated against her for opposing Sylvester's discriminatory practices and

because Plaintiff is female. *Id.* at ¶ 58. Plaintiff averred that Moorhead: (1) repeatedly told

Plaintiff that she does not like working with a female and that she has never had a female

assistant; (2) had "discriminatorily changed" her shift in January 2002; (3) wrongly issued

Plaintiff negative evaluations and accused Plaintiff of not being "a team player" and negatively affecting the staff's morale; (4) constantly told Plaintiff that she was "out of here;" (5) "evaluate[d] [Plaintiff] and another female in a more rigid manner than she evaluate[d] the male employees whom she supervises;" and (6) constructively arranged for Plaintiff's termination while Plaintiff was out on a medical leave. *Id.* at ¶ 59 and Ex. B Pl. Dep. 102:4-5. Plaintiff did not allege that she filed a formal complaint with Woodhull Hospital's Equal Employment Office. Def. 56.1 Ex. B Pl. Dep. at 72:4-77:24. Plaintiff asserts that she made an informal verbal complaint regarding Sylvester's unwanted sexual advances to Sullivan in May 2002, "which resulted in the discriminatory treatment escalating," because Sullivan allegedly informed Moorhead of Plaintiff's complaints. Def. 56.1 Ex. W "NYSDHR Complaint Jan. 7, 2003;" Pl. Dep. 101:1-102:6.[2] Plaintiff also complained of Sylvester's advances to Villanueva around the same time. Pl. Dep. 76:5-77:11. Moreover, Plaintiff complained to Lisa Scott, the associate executive director under Sullivan, about Moorhead in May and October of 2002, but Plaintiff did not inform Scott that she felt Moorhead's alleged mistreatment was due to Plaintiff's gender. Def. 56.1 Ex. B Pl. Dep. 99:1-102:25. Plaintiff also complained to Sullivan about Moorhead at some unspecified point, stating that Moorhead was treating Plaintiff unfairly based on her "previous work experience with them, the way that I used to work" and that Moorhead was "treating [her] unfairly." *Id.* at 100:1-101:12. Plaintiff explained that she felt it was due to her gender, telling Sullivan about Moorhead's alleged comment that she did "not like to work with me and she did not like to work with females." *Id.* at 100:1-101:12.

---

[2] By the time Plaintiff made her May 2002 complaint, Sylvester had already left the employ of HHC, although he remained on the payroll by utilizing his sick, holiday and annual leave, through December 20, 2002. Def. 56.1 Ex. O "A. Sylvester's Employee Profile."

Plaintiff filed a second NYSDHR complaint on February 18, 2003, in which she alleged that she was terminated in retaliation for filing the January 7, 2003, NYSDHR complaint. Def. 56.1 ¶ 65. In response to Plaintiff's two filings, the NYSDHR issued "no probable cause" determinations on November 26, 2004 and November 29, 2004, respectively. Def. 56.1 Ex. Y and Z "NYSDHR Determination & Order After Investigation (Nov. 26, 2004) & (Nov. 29, 2004)". In the NYSDHR's responses, the division noted that, with respect to the January 7, 2003 sexual harassment claim, Plaintiff's claim was time barred under the NYSHRL's one year statute of limitations for filing discrimination claims. Def. 56.1 ¶ 67. The NYSDHR based this finding on Plaintiff's concession that the alleged harassment ended by December 2001, more than a year before she filed her complaint. *Id.* Moreover, the NYSDHR noted that, even assuming that Plaintiff's claims were timely, they could not be corroborated. *Id.* The NYSDHR also dismissed Plaintiff's February 18, 2003 claim against Moorhead and her claim of retaliatory discharge. *Id.* The EEOC adopted the findings of the NYSDHR and issued a "right to sue" letter on January 13, 2005. *Id.* at ¶ 69.

On April 13, 2005, Plaintiff commenced the instant action, reasserting claims of (a) sexual harassment; (b) gender discrimination; and (c) retaliation under Title VII, 42 U.S.C. § 1983, NYSHRL and NYCHRL. Defendants filed for summary judgment on March 30, 2009. The Court now turns to this motion.

## STANDARD OF REVIEW

Summary judgment should be granted if there is no genuine material issue of fact in dispute requiring resolution by trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A

dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1535 (2d Cir. 1997) (quoting *Anderson*, 477 U.S. at 248); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Celotex Corp. v. Cadrett*, 477 U.S. 317, 322 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

"It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases," and that "the salutary purposes of summary judgment-avoiding protracted, expensive and harassing trials-apply no less to discrimination cases than to . . . other areas of litigation." *Abdu-Brisson v. Delta Airlines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). "As in any other case, 'an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts. . . . She must come forth with evidence sufficient to allow a reasonable jury to find in her favor.'" *Chow v. Stride Rite Corp.*, No. 05 Civ. 02417, 2009 WL 196030, *1 (S.D.N.Y. Jan. 27, 2009) (quoting *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (internal quotation marks omitted)). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Niagra Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Id.* (quoting *Anderson*, 477 U.S. at 252).

When a party is proceeding *pro se*, the Court is obliged to "read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). In discrimination cases, the Second Circuit has warned that "an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001)). Nevertheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *Holtz*, 258 F.3d at 69 (quoting *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997)).

## DISCUSSION

I.    **Plaintiff's Title VII Claims**

    A.    **Individual Defendants**

It is well settled that unlike employers, "individuals are not subject to liability under Title VII." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (internal quotation marks and citations omitted); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII"), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). Accordingly, to the extent Plaintiff asserts Title VII claims against defendants Sylvester and Moorhead, those claims are dismissed.

    B.    **Title VII Time Limitations**

As an initial matter, Title VII claims are subject to time requirements, as set forth in 42 U.S.C. § 2000e-5(e)(1). In New York, an individual must file a charge of discrimination within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *Lukasiewicz-Kruk v. Greenpoint YMCA*, No. 07-CV-2096, 2009 WL 3614826, at *6 (E.D.N.Y. Oct. 30, 2009). The Supreme Court has held that Title VII "precludes recovery for discrete acts of discrimination or retaliation that occurred outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). Moreover, "each discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. "A discrete act of discrimination is an act that in itself constitutes a separate actionable unlawful employment practice and that is temporally distinct." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 638 (2007) (internal quotation marks omitted). Examples of discrete discriminatory acts include "termination, failure to promote, denial of transfer, or refusal to hire." *Morgan*, 536 U.S. at 114.

As Plaintiff filed her complaint with the NYSDHR on January 7, 2003, any alleged discriminatory or harassing conduct must have occurred after March 13, 2002 to be properly considered under Title VII. Defendants assert the following acts are time barred, and thus cannot support a Title VII sex or gender discrimination claim: (a) Sylvester's alleged sexual harassment of Plaintiff; (b) Plaintiff's four evaluations prepared by Sylvester; and (c) Moorhead's decision to move Plaintiff's shift in January 2002.

With regard to Sylvester's alleged sexual harassment, Plaintiff conceded that the alleged sexual harassment ended in December 2001, *see* Def. 56.1 ¶ 57, thus, a Title VII claim arising from such acts is time barred, as it ended more than 300 days before Plaintiff filed her January 7, 2003 complaint with the NYSDHR. *See Morgan*, 536 U.S. at 105. With regard to the Plaintiff's

11

evaluations prepared by Sylvester, which covered the period of Plaintiff's hiring through February 2002, a Title VII claim arising from those evaluations is also time barred, as all evaluations were given to Plaintiff prior to March 13, 2002. *See Morgan*, 536 U.S. at 105.[3] Finally, with regard to Moorhead's January 2002 decision to assign Plaintiff to a different shift, a Title VII claim arising from this act is also properly time barred because the shift re-assignment occurred more than 300 days prior to Plaintiff's January 7, 2003 NYSDHR filing. *See id.*

## C. Title VII Gender Discrimination

### 1. Burden Shifting Frameworks

Defendants next contend Plaintiff does not adduce sufficient evidence to support a claim of Title VII gender discrimination, applying the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Nevertheless, "Title VII cases[ ] can be characterized as 1) pretext cases and 2) mixed motive cases." *Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir. 1997). The *McDonnell Douglas* framework applies only to pretext cases, where "there is no evidence of direct discrimination." *Ahmed v. Heartland Brewery L.L.C.*, 05 Civ. 2652(PKC), 2007 WL 2125651, at *5 (S.D.N.Y. Jul. 25, 2007). Where a plaintiff shows that "an impermissible criterion in fact entered into the employment decision, a somewhat different analysis takes place." *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1181 (2d Cir. 1992). Under these mixed motive cases, courts apply the burden-shifting framework of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), *superseded in part on other grounds by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 St. 1074, where, at the first stage, a plaintiff

---

[3] Plaintiff's fourth evaluation, given to her in February 2002, was not dated until March 14, 2002–299 days before Plaintiff filed her NYSDHR complaint. *See* Def. 56.1, Ex. W "Jan. 7, 2003 NYSDHR Complaint." Nevertheless, Plaintiff claims to have received this negative review–as she detailed in her January 7, 2003, NYSDHR complaint– in February 2002. *See* Def. 56.1, Ex. W "Jan. 7, 2003 NYSDHR Complaint."

must show that "a prohibited discriminatory factor played a 'motivating part' in a challenged employment decision. . . ." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 173 (2d Cir. 2006) (citations omitted). At the second stage of the *Price Waterhouse* analysis, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision anyway." *Smith v. Tuckahoe Union Free Sch. Dist*, No. 03 Civ. 7951, 2009 WL 3170302, at *6 (S.D.N.Y. Sept. 30, 2009) (citing *Raskin*, 125 F.3d at 60).

Thus, a mixed motive case only arises when a plaintiff can show that "an impermissible criterion was in fact a 'motivating' or 'substantial' factor in the employment decision." *de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 23 (2d Cir. 1996) (quoting *Price Waterhouse*, 490 U.S. at 258). Only after it is shown that "the forbidden animus was a motivating factor in the employment decision" does the burden shift to the employer to prove that it would have made the same decision absent the discriminatory factor. *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 181 (2d Cir. 1992). "To warrant a mixed motive burden shift, [a] plaintiff must be able to produce a 'smoking gun' or at least a 'thick cloud of smoke' to support his allegations of discriminatory treatment." *Id.* (citing *Raskin*, 125 F.3d at 61). "Evidence potentially warranting a *Price Waterhouse* burden-shift includes, *inter alia*, policy documents and evidence of statements or actions by decisionmakers that may be viewed as *directly reflecting* the alleged discriminatory attitude." *Ahmed*, 2007 WL 2125651, at *4 (quoting *Raskin*, 125 F.3d at 60-61).

## 2. Evidence of Discriminatory Intent

In the instant case, Plaintiff proffers evidence, in the form of deposition testimony, that Moorhead allegedly stated to her that "she did not like working with females." Def. 56.1, Ex. B Pl. Dep. 101:7-8; *see also id.* at 101:4-5; 102:5-6 (describing Moorhead's discriminatory

13

treatment as, "I don't like to work with females, you are out of here and I would get that over and over, almost every day."). Where the evidence of discriminatory intent is a statement, a comment will be considered a probative statement that "evinces an intent to discriminate," rather than a "stray remark," based on:

> (1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue, (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decision making process.

*Silver v. Northshore Univ. Hosp.*, 490 F. Supp. 2d 354, 362 (S.D.N.Y. 2007); *see also Tomassi v. Insignia Fin-Group, Inc.,* 478 F.3d 111, 115 (2d Cir. 2007) ("The more the remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be.")

The Court finds Moorhead's alleged remarks sufficiently discriminatory to command a mixed motive analysis. Here, Moorehead was Plaintiff's supervisor. Although Moorhead could not directly terminate Plaintiff, Moorhead did exert enormous influence in the decision-making process by issuing negative performance evaluations to Plaintiff and on the basis of those evaluations, recommending Plaintiff's termination to Sullivan, who ultimately accepted and signed Moorhead's recommendation. Def. 56.1 ¶ 54 and Ex. S. *See Ahmed*, 2007 WL 2125651, *5 ("The comments of an individual without direct authority to discharge a plaintiff may constitute evidence of discriminatory motivation where . . . the commenting individual 'had enormous influence in the decision-making process' associated with [the] plaintiff's termination.").

Second, for purposes of this summary judgment motion, Moorhead's alleged comments were sufficiently temporally related to her termination. Plaintiff never pinpointed the exact

timeframe of Moorhead's remarks, but seemed to describe them as occurring "almost every day." Def. 56.1, Ex. B Pl. Dep. 102:5-6. Plaintiff also stated that she complained of these remarks to Lisa Scott in October 2002 and to Sullivan at some unspecified time. *Id.* at 101:4-5; 102:7-9. While it is unclear from the record when the statements were made, in the light most favorable to Plaintiff, the Court assumes that the statements were made sufficiently close in time to Moorhead's early November 2002 termination recommendation to warrant a mixed-motive analysis.

Third, if Plaintiff is credited, a reasonable jury could consider Moorhead's statements against working with females as evidence of discriminatory intent, given the clarity of the message of disapproval of women as a class. *See Oncale v. Sundowner Offshore Servs., Inc.* 523 U.S. 75, 81 (1998) ("A trier of fact might reasonably find [Title VII sex] discrimination, . . . if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace."). Finally, Plaintiff testified in her deposition that when Moorhead would repeatedly say that she did not like working with females, she would also say that "Plaintiff was out of there." Def. 56.1, Ex. B Pl. Dep. 102:4-5. Reading Plaintiff's deposition testimony liberally, this statement suggests a relationship between Moorhead's decision to terminate and her statement that she does not like working with females. Thus, the remark can be viewed as sufficiently related to the decision-making process.

Accordingly, the Court holds that Plaintiff has met her burden under the first stage of the *Price Waterhouse* framework and the burden shifts to Defendants to show that the termination would have occurred regardless of the discriminatory animus. *See Price Waterhouse*, 490 U.S. at 235, 250 (suggestions that plaintiff "walk more femininely, talk more femininely, dress more

15

femininely, wear make-up, have her hair styled, and wear jewelry" and other gender-based comments warranted mixed-motive burden shift); *Bookman v. Merrill Lynch*, No. 02 Civ. 1108, 2009 WL 1360673, at *6, 13 (S.D.N.Y. May 14, 2009) (supervisors' comments such as "it's better than sitting at the back of the bus" and "the future of the office lay with young White brokers" were sufficient to warrant a *Price Waterhouse* burden shift); *Smith*, 2009 WL 3170302, at *7 (supervisor's use of a racial epithet the day before supervisor recommended plaintiff's termination warranted the *Price Waterhouse* framework).

### 3.    Evidence of Defendants' Decision to Terminate Plaintiff

As Plaintiff has established that the employment decision may have been at least partially motivated by a prohibited discriminatory reason, namely, gender animus on the part of Moorhead, the burden then shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision anyway. *Price Waterhouse*, 490 U.S. at 258. Nevertheless, "[p]roving that the same decision would have been justified . . . is not the same as proving that the same decision would have been made." *Id.* at 252 (internal quotation marks omitted).

> "An employer may not . . . prevail in a mixed-motives case by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision." Nor may the employer "meet its burden in such a case by merely showing that at the time of the decision it was motivated only in part by a legitimate reason."

*Scully v. Summers*, No. 95 Civ. 9091(PKL), 2000 WL 1234588, at *15 (S.D.N.Y. Aug. 30, 2000) (quoting *Price Waterhouse*, 490 U.S. at 252). The employer "must show that its legitimate reason, standing alone, would have induced it to make the same decision." *Price Waterhouse*, 490 U.S. at 252.

Defendants have met this burden, by proffering the following evidence: (1) Sylvester's November 30, 1999 performance appraisal recommending Plaintiff educate herself regarding regulatory issues of hospital waste; (2) Sylvester's June 13, 2000 performance appraisal noting Plaintiff needed to "quell anxiety" and demonstrate "a little more sensitivity" when dealing with her subordinates; (3) Sylvester's third evaluation of Plaintiff, noting unresolved issues in linen operation as well as Plaintiff's need to focus on "being a team player," "being less emotional, less argumentative," and "continu[ing] to work on being less sensitive, not personalizing situations;" (4) Sylvester's fourth evaluation of Plaintiff, noting that "increased responsibility" presented by Plaintiff's acting assistant directorship "seemingly overwhelmed [her]," and that within Plaintiff's tenure in that position, the "general operation and the cleanliness of the facility were adversely affected;" (5) Sylvester also noted within that evaluation that Plaintiff had a physical confrontation with a subordinate and "that compromised her ability to be an effective leader;" (6) evidence that Woodhull Hospital received a fine of $11,200 on March 11, 2002, for improper disposal of medical waste –the area overseen by Plaintiff; and finally, (7) Plaintiff failed to submit a subordinate's performance appraisal, even after receiving an extension to ensure timely submission. In light of this evidence, Defendants have established by a preponderance of the evidence that Plaintiff's performance was deteriorating throughout her tenure and that the hospital was ultimately fined a substantial sum of money for a violation in Plaintiff's area of responsibility. Indeed, aside from the comments of Moorhead, no other evidence of discriminatory animus appears in the record and, in fact, Plaintiff was eventually replaced by a woman. Def. 56.1 Ex. P Moorhead Dep. 184:1-25. Under this evidence, the Court is satisfied that, as a matter of law, Defendants have "proffered a legitimate reason for Plaintiff's termination" that-"'standing alone'-would have induced [them] to make the same decision."

17

*Bookman*, 2009 WL 1360673, at *16 (quoting *Scully*, 2000 WL 1234588, at *15). Consequently, the Court dismisses Plaintiff's gender discrimination claim.

### D.    Title VII Hostile Work Environment

Hostile work environment claims are subject to "demanding standard[s]" in order to avoid construing Title VII as a "general civility code." *Wilson v. N.Y.P. Holdings, Inc.*, No. 05-CV-10355, 2009 WL 873206, at *27 (S.D.N.Y. Mar. 31, 2009). Thus, in order to make a claim for a hostile work environment, a plaintiff must show "(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). Acts that amount to mere utterances which engender offensive feelings in an employee do not sufficiently affect the conditions of employment to implicate a hostile environment claim. *See Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993).

On a motion for summary judgment, "[a] plaintiff must produce evidence that could lead a reasonable jury to conclude that 'the work environment both objectively was, and subjectively was perceived by the plaintiff to be, sufficiently hostile to alter the conditions of employment for the worse.'" *Divers v. Metro. Jewish Health Sys.*, No. 06-CV-6704, 2009 WL 103703, at *15 (E.D.N.Y. Jan. 14, 2009) (quoting *Schiano*, 445 F.3d at 604). In the case of a sex-based or gender-based hostile work environment claim, a plaintiff must introduce evidence that "demonstrate[s] that the conduct occurred because of her sex." *Blake v. Potter*, No. 07-CV-4520, 2009 WL 1448974, at *1 (2d Cir. May 26, 2009) (alteration in original) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). "Courts look at all circumstances to ascertain

18

whether an environment is sufficiently hostile or abusive to support a claim." *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 1998) (citing *Harris*, 510 U.S. at 23; *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)). "The factors that courts may consider include: frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Leibovitz*, 252 F.3d at 188 (citing *Harris*, 510 U.S. at 23).

In considering what comprises a claim of hostile work environment, all acts will be considered that constitute the same unlawful employment practice as long as at least one act is not barred by the statute of limitations. *Morgan*, 536 U.S. at 122. Thus, the continuing violations doctrine may allow acts that were otherwise time-barred to be introduced "where there have been specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination," *Harris v. S. Huntington Sch. Dist.*, No. 06-CV-3879, 2009 WL 875538, at *10 (E.D.N.Y. Mar. 30, 2009) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir. 2001)), amounting to an "official policy or mechanism of discrimination." *Predun v. Shoreham-Wading River Sch. Dist.*, 489 F. Supp. 2d 223, 228 (E.D.N.Y. 2007). Nevertheless, the continuing violations doctrine is disfavored and courts are hesitant to apply it absent a showing of compelling circumstances. *Predun*, 489 F. Supp. 2d at 228 (citing *Trinidad v. New York City Dep't of Corr.*, 423 F. Supp.2d 151, 165 n.11 (S.D.N.Y. 2006); *Stephens v. Hofstra Univ.*, No. 01-CV-5388, 2005 WL 1505601, at *4 (E.D.N.Y. June 24, 2005)).

Plaintiff introduces the following in support of her hostile work environment claim: (1) the alleged sexual harassment of Sylvester, which ended in December 2001; (2) Sylvester's

19

negative performance evaluations of Plaintiff, ending in February 2002; (3) Moorhead's January 2002 decision to transfer Plaintiff to a different shift; (4) Moorhead's statement that she did not like working with a female and had never had a female assistant; (5) Moorhead's unspecified number of statements that Plaintiff is not a team player, (6) Moorhead's "constant" statements that Plaintiff "is out of here," (7) Moorhead's micro-management of Plaintiff's work, (8) the July 15, 2002, disciplinary warning issued to Plaintiff by Moorhead, and (9) Moorhead's negative performance evaluations of Plaintiff's work.

With regard to Sylvester's alleged sexual harassment of Plaintiff, those acts fall out of Title VII's limitations period and may not be considered with Plaintiff's claim of hostile work environment under a continuing violations theory. *See Morgan*, 536 U.S. at 122. All the alleged harassing conduct by Sylvester occurred prior to March 13, 2002 and thus cannot establish a Title VII claim. Furthermore, Moorhead's alleged actions against Plaintiff, while timely, were permeated with gender-based animus of a non-sexual nature and are, thus, unrelated to Sylvester's alleged acts of sexual harassment. Accordingly, Moorhead's conduct cannot be said to form "one unlawful employment practice," *Morgan*, 536 U.S. at 117, with Sylvester's actions and, thus, the continuing violations doctrine does not apply to this case. *See Harris*, 2009 WL 875538, at *10.

With regard to the remainder of the acts within the limitations period, they are not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment to create a hostile work environment for Plaintiff as a matter of law. Moorhead's isolated remarks–that she did not like working with a female and had never had a female assistant–amount to mere "stray remarks" that do not constitute a hostile work environment. *See Payton v. City Uni. of New York*, 453 F. Supp. 2d 775, 785 (S.D.N.Y. 2006) (citation omitted). Moreover, Moorhead's

remark, while inappropriate, was not nearly so objectionable as those remarks made by a supervisor to an employee in *Baron v. Winthrop Univ. Hosp.*, that were held not to constitute a hostile work environment. No. 03-cv-7233, 2006 WL 3147366, *1 (2d Cir. 2006). In *Baron*, the objectionable comments included: "'Women should not be in health care, 'females should not be making any decisions,' and '[all females] should have their tubes tied.'" *Id.* Nevertheless, these comments did not create a hostile work environment because "they were not sufficiently severe or pervasive to alter the terms and conditions of employment." *Id.* (citation omitted).

Similarly, Moorhead's comments that Plaintiff is not a "team player" and that she is "out of there" do not rise to the level of creating a hostile work environment as "conduct that is 'merely offensive, unprofessional, or childish' cannot support a hostile work environment claim." *Payton,* 453 F. Supp. 2d at 785 (citation omitted). Plaintiff's allegations that Moorhead micro-managed Plaintiff, even if true, also do not support a claim of hostile work environment. *See Garone v. United Parcel Serv., Inc.*, 436 F. Supp. 2d 448, 469 (E.D.N.Y. 2006) ("the fact that [a supervisor] apparently had an authoritative management style that [the plaintiff], for whatever reason, subjectively viewed as inappropriate does not transform the occasional off-color remark into harassment or strict managerial decision into chauvinism"); *Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05 Civ. 5109, 2007 WL 1149979, at *9 (S.D.N.Y. Apr. 18, 2007) (Plaintiff cannot establish a hostile work environment by demonstrating that her supervisor subjected her to intense scrutiny and criticized her more than he did other employees).

Similarly, Plaintiff's receipt of negative job evaluations and disciplinary warnings resulting from the failure to meet a work requirement, without more, do not support a claim of sex-based hostile work environment. *See Salerno v. Town of Bedford, NY*, No. 05 Civ. 7293, 2008 WL 5101185, *8 (S.D.N.Y. Dec. 3, 2008) ("Allegations of negative job evaluations or

excessive reprimands are insufficient to establish a hostile environment claim" (citing *Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001)).

As the totality of the circumstances do not support a claim of hostile work environment based on sex, the claim must be dismissed. *See Leibovitz*, 252 F.3d at 188 (citations omitted).

### E.  Title VII Retaliation

Defendants next assert that Plaintiff's claim of retaliation must be dismissed. Title VII provides that "[i]t shall be unlawful . . . for an employer to discriminate against any of his employees . . . because he has opposed any practice made unlawful by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In order to prevail on a Title VII retaliation claim, Plaintiff must establish a prima facie case showing that: (1) Plaintiff was engaged in a protected activity; (2) the employer knew of the activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996).

Plaintiff asserts that she was terminated "because of her refusal to acquiesce to sexual harassment and because of her complaints about such sexual harassment." Compl. ¶ 20. Defendants do not challenge that Plaintiff meets the first three prongs of the retaliation inquiry. Plaintiff contends, and Defendants do not deny, that her May 2002 complaint to Sullivan and Villanueva regarding her allegations of Sylvester's behavior and her January 7, 2003 NYSDHR filing constituted "protected activity," that Defendants knew of her protected activity, and that she was terminated. Defendants assert, however, that Plaintiff cannot establish a *prima*

*facie* case of retaliation based on the May 2002 complaint, because she cannot establish a causal connection between the complaint and her January 2003 termination. Def. Mem. at 19.

"[C]ausation can be established by showing that the retaliatory action was close in time to the protected activity; that other similarly situated employees were treated differently; or with direct proof of retaliatory animus." *Reed*, 95 F.3d at 1178 (citing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990); *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987)). When assessing causal connections based on temporal relationship, "[t]hree months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation." *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005). "Six months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation." *Id.* (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

With regards to Plaintiff's May 2002 complaint to Sullivan and Villanueva, Defendants correctly contend that the causal nexus is too attenuated. While Plaintiff's protective activity occurred in May 2002, Sullivan did not sign Moorhead's termination recommendation until November 8, 2002, more than five months after Plaintiff lodged her complaint with Sullivan. Def. 56.1 ¶ 54. A five-month gap has been held insufficient to establish proximity. *See Chamberlin v. Principi*, No. 06-1291-cv, 2007 WL 2692339 (2d Cir. Sept. 12, 2007). This time period approaches a time frame that is "well beyond the time frame for inferring retaliatory causation." *Id.* (citing *Clark County Sch. Dist.*, 532 U.S. at 273-74).

In addition to the strained temporal proximity, Plaintiff's claim of retaliation--as it pertains to the May 2002 protected activity–fails for other reasons. Where a claim of retaliation is based solely on timing, "and gradual adverse job actions began well before the plaintiff had

ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 93 (2d Cir. 2001). The court in *Slatterly* held that an employee who had experienced adverse job actions for five months prior to a protected activity could not maintain a claim of retaliation, where the causal connection was based solely on timing. *Id.* In the instant case, Plaintiff had been experiencing adverse job actions in the areas of waste management and workplace sensitivity for a protracted period of time prior to the protected activity. Plaintiff's adverse job actions were in the form of negative performance evaluations, which began with her first performance evaluation and grew progressively worse with each subsequent evaluation. In Plaintiff's first performance appraisal, issued to her by Sylvester in November 1999, she received only a "satisfactory" in regards to "waste management," and Sylvester noted that Plaintiff needed to educate herself on regulatory issues involving hospital waste. Def. 56.1 ¶ 14. Sylvester's second appraisal, dated September 2000, instructed Plaintiff to quell her anxiety, take accountability for operational issues, and undergo "sensitivity training." *Id.* ¶ 15. Sylvester's third evaluation on August 2001 noted that Plaintiff "should expand [her] ability to handle several tasks at the same time," and with respect to overall linen operation of the hospital, Plaintiff needed to address "several critical operational issues . . . . " Def. 56.1 Ex. M "Managerial Performance Appraisal." That performance appraisal also directed Plaintiff to work on (a) "being a team player," (b) "being less emotional, less argumentative," and (c) "continu[ing] to work on being less sensitive, not personalizing situations. *Id.* In Sylvester's final appraisal in February 2002, Plaintiff received a "marginal" overall rating. *Id.* ¶ 25. Sylvester noted that Plaintiff's "increased responsibility seemingly overwhelmed [her]," and that "this evaluation indicates that [Plaintiff] is more effective in an Assistant Directorship position." *Id.* ¶ 26-27. Finally, on March 11, 2002, Woodhull Hospital

received a fine of $11,200, for improper disposal of medical waste–the area for which Plaintiff was responsible. Def. 56.1 Ex. P Moorhead Dep.181:1-183:12. Thus, Plaintiff in the instant case, as in *Slatterly*, experienced a series of adverse employment actions well before the May 2002 protected activity occurred. Accordingly, a claim of retaliation is not properly based upon the May 2002 complaints due to failure to establish a causal nexus.

Plaintiff's January 7, 2003, NYSDHR complaint also cannot form a basis for a claim of retaliation because "to be actionable, the protected activity must precede the actions which plaintiff claims were retaliatory." *Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir. 2001); *Manoharan v. Columbia Univ. Coll. of Phys. & Surg.*, 842 F.2d 590, 593 (2d Cir. 1988). In this case, the decision to terminate Plaintiff was made by Sullivan on November 8, 2002. Def. 56.1 ¶ 53. Plaintiff, however, was not terminated on November 8, 2002, the day of the decision, because on November 7, 2002, Plaintiff left work on workers compensation leave due to an alleged back injury sustained on the job. *Id.* ¶ 54. When Plaintiff returned to work on January 27, 2003, she was terminated effective January 28, 2003. *Id.* at ¶ 55. Thus, the decision to terminate Plaintiff was made prior to her decision to file a NYSDHR complaint by several months. Her January 7, 2003 NYSDHR complaint acknowledges that she was on the verge of being terminated. *See* Def. 56.1, Ex. W "January 7, 2003 NYSDHR Complaint" ¶ 14 ("Ms. Moorhead [is] constructively arranging my employment termination."). Thus, Plaintiff's January 7, 2003 NYSDHR complaint cannot be a basis for her claim of retaliation because it did not precede her adverse employment action. *See Raniola*, 243 F.3d at 624; *Manoharan*, 842 F.2d at 593). Accordingly, Plaintiff's retaliation claim is dismissed.

## II.     Plaintiff's § 1983 Claims

### A.     Statute of Limitations

Section 1983 prohibits any deprivation of constitutional or legal rights under color of state law. 42 U.S.C. § 1983. In New York State, the statute of limitations for actions brought pursuant to 42 U.S.C. § 1983 is three years. *Owens v. Okure*, 488 U.S. 235, 251 (1989); *Paige v. Police Dep't of City of Schenectady*, 264 F.3d 197, 199, n.2 (2d Cir. 2001). The date of accrual for a § 1983 claim is determined by federal law. *Wallace v. Kato,* 549 U.S. 384, 388 (2007). A § 1983 claim generally accrues "when the plaintiff knows or has reason to know of the harm" she has suffered. *See Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)). "The pursuit of Title VII administrative remedies does not toll the statute of limitations on other Civil Rights Act claims," including those brought pursuant to 42 U.S.C. § 1983. *Szarejko v. Great Neck Sch. Dist.*, 795 F. Supp. 81, 83 (E.D.N.Y. 1992) (citing *Weise v. Syracuse Univ.*, 522 F.2d 397, 408 n.15 (2d Cir. 1975)). In this case, Plaintiff commenced the instant action on April 13, 2005 and thus she must establish a constitutional deprivation occurring three years prior to that date.

Sylvester's alleged sexual harassment of Plaintiff ended in December 2001, more than three years before Plaintiff filed the instant action on April 13, 2005, As § 1983 claims are not tolled for Title VII administrative remedies, *Szarejko*, 795 F.Supp. at 83, and no evidence suggests that the statute of limitations should otherwise be tolled, any § 1983 claim arising from the alleged sexual harassment is time barred. The same is true with regard to any § 1983 claims arising from all four of Sylvester's performance appraisals of Plaintiff and Moorhead's January 2002 decision to transfer Plaintiff to a different shift. The last of Sylvester's performance appraisals was given to Plaintiff in February 2002, and Plaintiff was transferred sometime during the month of January 2002–both events occurring more than three years prior to the commencement of the instant action.

Thus, the only conduct for which a § 1983 claim may arise are: (1) evaluations of Plaintiff issued to her by Moorhead on July 9, 2002 and Sept. 30, 2002, (2) a disciplinary warning issued to Plaintiff by Moorhead on July 15, 2002, (3) Plaintiff's January 27, 2003 termination, and (4) Moorhead's comments about her dislike for working with women.

**B.      Gender Discrimination**

To the extent Plaintiff maintains a gender discrimination claim under § 1983, it must fail. Employment discrimination claims under § 1983 are evaluated under the same analytical framework as those brought under Title VII. *See Rumala v. New York City Transit Auth.*, No. 02-CV-3828, 2005 WL 2076596, at *11 n.13 (E.D.N.Y. Aug. 26, 2005); *Sorlucco v. New York City Police Dept.*, 888 F.2d 4, 7 (2d Cir. 1989). Since the same events are actionable under Title VII and § 1983 in this case, Plaintiff's § 1983 discrimination claim would fail for the same reasons as the Title VII claim. Accordingly, the Court dismisses Plaintiff's § 1983 claim based on gender discrimination.

**C.      Stigma-Plus**

Defendants also assert that Plaintiff's Fourteenth Amendment claim for deprivation of a liberty interest without due process of law must also be dismissed. "An individual is entitled to due process for a protected liberty interest where one's 'good name and reputation' are placed into question by a public agency." *Behrend v. Klein*, Nos. 04-CV-5413, 04-CV-5414(NGG)(SMG), 2006 WL 2729257, at *7 (E.D.N.Y. Sept. 25, 2006) (citing *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 271 (S.D.N.Y. 2005)). "Loss of reputation can constitute deprivation of a liberty interest in the course of dismissal from government employment." *Id.* (citing *Patterson v. City of Utica*, 370 F.3d 322, 329-30 (2d Cir. 2004)). To establish a claim based on a liberty interest, Plaintiff must demonstrate a stigma to her good name plus "some

other tangible element in order to rise to the level of a protectible liberty interest." *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Thus, Plaintiff must show (1) "a stigmatizing statement that calls into question [her] good name, reputation, honor, or integrity," or denigrates her "competence as a professional and impugn[s her] . . . professional reputation in such a fashion as to effectively put a significant roadblock in [her] continued ability to practice . . . her profession," (2) "the public dissemination of the stigmatizing statement," and (3) "that the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." *Behrend*, 2006 WL 2729257, at *7 (internal citations and quotation marks omitted). Nevertheless, the availability of a "reasonably prompt, post-termination name-clearing hearing," such as an Article 78 hearing, "is sufficient to defeat a stigma-plus claim . . . ." *Spang v. Katonah-Lewisboro Union Free Sch. Dist.*, 626 F. Supp. 2d 389, 397 (S.D.N.Y. 2009) (quoting *Segal*, 459 F.3d at 214)).

Defendants correctly argue that Plaintiff's liberty interest has not been violated because "[P]laintiff has not alleged that [D]efendants published any stigmatizing information." Def. Mem. at 21. Although Plaintiff alleges that she "has suffered impairment and damage to [her] good name and reputation," that she has "been unable to find comparable employment," she fails to point to any evidence, that Defendants have published stigmatizing information about her, which is essential to any stigma-plus claim. *See Behrend*, 2006 WL 2729257, at *7 (citing *Patterson*, 370 F.3d at 330).

Moreover, Plaintiff was not denied due process of the law. Plaintiff alleges that Defendants violated her "Equal Protection, Liberty Interest and Due Process Clauses of the 14th amendment" because: (1) she was "terminated for petitioning her governmental employer for

28

redress of her grievances;" (2) she refused to "acquiesce to sexual harassment;" (3) because of her "complaints about sexual harassment;" and (4) because plaintiff's termination "was accomplished without any notice or opportunity to be heard." Compl. ¶ 18. Even assuming *arguendo*, that Plaintiff had a cognizable § 1983 claim, which she does not, her claim would still fail because Plaintiff has not demonstrated that she availed herself of an Article 78 hearing, which was available to her. *See Spang*, 626 F. Supp. 2d at 397; *Walsh v. Suffolk County Police Dept.*, No. 06 Civ. 2237, 2008 WL 1991118, at *14 (S.D.N.Y. May 5, 2008) ("[D]ue process does not require a pre-termination name-clearing hearing with respect to at-will employees.")

## III.    Plaintiff's State Law Claims

Plaintiff's remaining causes of action, namely her NYSHRL and NYCHRL claims, are pendent claims. Under 28 U.S.C. § 1367(c)(3) a district court, in its discretion, may "decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims." *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 103 (2d Cir. 1998). In exercising its discretion, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* In the instant case, all federal claims have been dismissed and nothing counsels this Court to retain the state law claims. Accordingly, this Court declines to exercise supplemental jurisdiction and Plaintiff's NYSHRL and NYCHRL claims are hereby dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's Title VII and § 1983 claims is granted. As this Court declines to exercise jurisdiction over Plaintiff's remaining state law claims, Plaintiff's NYSHRL and NYCHRL claims are dismissed without prejudice. Plaintiff's complaint is hereby dismissed in its entirety and the Clerk of the Court is directed to close this case.

**SO ORDERED.**


SANDRA L. TOWNES
United States District Judge

Dated: January 28 , 2010
      Brooklyn, New York